FILED
2020 Jan-21 AM 10:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| MINNIE TUNSTALL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:18-cv-02092-JEO |
| | ) |
| CAPTAIN D'S LLC d/b/a Captain D's | ) |
| Restaurant Inc., | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION**

Plaintiff Minnie Tunstall brings this premises liability action against Defendant Captain D's LLC to recover for injuries she suffered when she slipped and fell on the floor in a Captain D's restaurant. (Doc. 1-1 at 3-5).[1] The case was originally filed in the Circuit Court of Jefferson County and removed to this court by Defendant. (Doc. 1). Pending before the court[2] is Captain D's motion for summary judgment, along with its brief and evidence in support of the motion. (Doc. 14). Plaintiff filed a brief in opposition to summary judgment, (doc. 15), and

---

[1] All evidentiary citations refer to the document and page number provided by CM/ECF, the court's electronic document filing system, except for citations to depositions, which refer to the page number provided on the deposition transcript.

[2] The parties have consented to an exercise of plenary jurisdiction by a magistrate judge, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Doc. 9).

Defendant filed a brief in reply, (doc. 16). The motion is now ripe for decision and due to be granted in full for the reasons that follow.

I.  **STATEMENT OF FACTS**

On May 25, 2017, Plaintiff left work at the Bessemer County DA's office and went to Captain D's restaurant in Bessemer, Alabama, for lunch. (Doc. 14-1 ("Tunstall Dep.") at 25, 39-41). She went to lunch alone and was wearing "slip-on black heels." (*Id*. at 39, 56-58). The restaurant was not crowded – there were only two people there – and Plaintiff does not recall it being dirty, but testified that she did not really remember. (*Id*. at 52-53).

When she got to the restaurant, she walked to the counter and ordered her meal and a water to drink. (*Id*. at 43-44; Doc. 15 at 14). The flooring in the area where customers order is carpeted, but at some place the flooring changes to a wood-like floor.[3] (Tunstall Dep. at 72-73). According to the receipt, Plaintiff ordered her food at 12:02 p.m. (*Id*. at 46; Doc. 15 at 14). She was given an empty cup for her drink and she filled it with water in the drink dispensary area.[4] (Tunstall Dep. at 44). After receiving her meal, Plaintiff walked to the back of the dining area, sat down with her food, and began eating. (*Id*. at 47-48). When she was about halfway done with her lunch, Plaintiff got up from the table to refill her cup. (*Id*. at 48-49). She

---

[3] There is no evidence in the record as to the exact nature of the flooring.

[4] Plaintiff does not remember exactly when she first filled her cup with water, but testified she got up to get a refill before falling. (Tunstall Dep. at 48-49).

did not make it all the way to the drink dispensary area, however, because she fell. (*Id*. at 49). Specifically, Plaintiff testified that she "walked to get there, and the next thing [she] knew, [she] was on the floor." (*Id*.).

When she fell, Plaintiff's left shoulder and head hit a storage cabinet. (*Id*.). Although Plaintiff was holding her cup in her hand when she fell, she could not remember whether she dropped the cup during her fall. (*Id*. at 58-60). She also could not recall whether there was ice in her cup before she fell. (*Id*. at 58-59). After she fell, she tried to get up by herself but could not. (*Id*. at 61). The assistant manager and a police officer helped her up off the floor. (*Id*.).

After her fall, Plaintiff noticed some little water spots on the floor.[5] (*Id*. at 61-62). Plaintiff testified there was not a puddle of water on the floor. (*Id*. at 62). She did not recall seeing the water spots on the floor before she fell, but she was not looking down as she was walking; she was looking toward where she was going. (*Id*. at 59, 71). She did not recall her clothes being wet after she fell.[6] (*Id*. at 71).

Plaintiff does not know how long the water and/or ice had been on the floor

---

[5] At some point after her fall, Plaintiff took a picture of the floor where she fell. (Tunstall Dep. at 65-66). During her deposition, she circled four areas where she contends water, or possibly ice, was present on the floor. (*Id*. at 67).

[6] Plaintiff's brief repeatedly refers to ketchup being on the floor. (Doc. 15 at 2, 4, 7, 8). There is absolutely no evidence that there was any ketchup on the floor. Instead, Plaintiff testified, and picture taken after the incident confirms, that two condiment cups were on the ground after she fell. (Tunstall Dep. at 68). Plaintiff did not know how the condiment cups got on the floor, but stated they were not there before her fall. (*Id*.). It is unclear whether anything was in the condiment cups.

3

before she fell.  (*Id*. at 76-78).  She did not see anyone spill anything on the floor. (*Id*. at 78).  Plaintiff did not see any employee cleaning while she was at the restaurant.  (*Id*. at 77, 78).

The assistant manager called an ambulance and asked Plaintiff to complete an incident report.  (*Id*. at 85, 87-88).  She wrote "down the date, time, facts of what happened, and how it happened" and she signed it.  (*Id*. at 88).  Plaintiff asked for a copy of the incident report, but was not given one.[7]  (*Id*.).  Additionally, Plaintiff testified that the assistant manager told her that "this floor is always . . . this floor, and he shook his head, it's slippery."  (*Id*. at 89).  The assistant manager also placed a wet floor sign in the area where Plaintiff fell.  (*Id*.).

Plaintiff stated that she believed the cause of her fall was "[t]he slipperiness of the floors" and the "little water spots" on the floor.  (Tunstall Dep. at 61-62). More specifically, her testimony is that the combination of the two, the slippery floor and the water, caused her to fall:

> A.  And the overall, I think, material of the flooring is possibly a problem, too,  It's part of it.

---

[7] Plaintiff makes much of the fact that the incident report was not produced during discovery. (Doc. 15 at 5).  Plaintiff accuses Defendant of intentionally failing to provide the discovery maintains that Defendant's alleged assertion that "no report was ever made or has ever [e]xisted . . . is an untrue statement . . . ."  (*Id*. at 6).  Plaintiff, however, did not raise any discovery issues with this court or seek to compel the production of any documents.  She also does not accuse Defendant of spoliation.  The belated accusations of Plaintiff are not a substitute for establishing her case, as it is her burden to do.  To the extent that Plaintiff claims she cannot prove her case because of Defendant's failure to produce the alleged incident report, (doc. 15 at 10), this contention is rejected.

4

Q: . . . You said that possible the floor material was part of it?

A: Uh-huh.

Q: What do you mean?

A: I think if water – if the floor is already slippery and water is on the floor, that tends to lend to its slipperiness.

Q: Okay. And so am I understanding your testimony correctly that you think this floor material in and of itself is slippery?

A: I think partly, yes. Uh-huh.

Q: Okay. And so that do you base that on?

A: My falling.

(*Id*. at 72).

The fire department arrived around 12:30 p.m.[8] and helped Plaintiff walk to her car. (*Id*. at 90). She had pain in the right side of her neck, shoulder, elbow, left wrist, lower back and left buttock area. (*Id*. at 91-92). Plaintiff drove herself to the hospital, and she was ultimately diagnosed with a torn rotator cuff. (*Id*. at 91, 95-96). She underwent physical therapy but had not had surgery as of the date of her deposition. (*Id*. at 99-104).

---

[8] Plaintiff states that the Fire Department arrived at 12:28 p.m. and points the court to the "Fire department report" attached to her brief. (Doc. 15 at 4). The one page (of a five page report) attached does not state when the Fire Department arrived. (*Id*. at 15). It does state that Plaintiff was initially assessed at 12:30:26 and her vital signs were recorded at 12:33. (*Id*.).

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleading depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying the portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id* at 323. Once the movant has met its initial burden, the non-moving party must go beyond the pleading and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue suitable for trial. *See id.* at 324; *see also* Fed. R. Civ. Pro. 56(e).

Substantive law identifies which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences must be resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is

merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

## III. DISCUSSION

Under Alabama law, the elements of negligence in a premises liability case "are the same as those in any tort litigation: duty, breach of duty, cause in fact, proximate or legal cause, and damages." *Sessions v. Nonnenmann*, 842 So. 2d 649, 651 (Ala. 2002) (citations and quotations omitted). A store or business like Target is "under a duty to exercise reasonable care to provide and maintain a reasonably safe premises" for its invitees, its customers.[9] *Maddox v. K–Mart Corp.*, 565 So. 2d 14, 16 (Ala. 1990); *see also Lilya v. Greater Gulf State Fair, Inc.*, 855 So. 2d 1049, 1054 (Ala.2003) ("The duty owed to an invitee by [a business] is the exercise of ordinary and reasonable care to keep the premises in a reasonably safe condition."). Moreover, if the premises is in a dangerous condition, and the business knew or should have known of the condition, the business owner has a duty "to give sufficient warning so that an invitee might avoid danger by the use of ordinary care." *Banks v. Bayou Bend II, Ltd.*, 552 So. 2d 1070, 1071 (Ala. 1989). But a store owner is not an insurer of a customer's safety and is liable only if it negligently fails to keep the premises in a reasonably safe condition. *Dolgencorp, Inc. v. Hall*, 890 So. 2d 98, 101 (Ala. 2003). As such, mere proof of an accident or injury is not enough to

---

[9] Captain D's does not dispute that Plaintiff was an invitee when she fell.

establish negligence. *See Lowe's Home Ctrs., Inc. v. Laxson*, 655 So. 2d 943, 946 (Ala. 1994) ("No presumption of negligence arises from the mere fact of an injury to an invitee. . . .").

To establish liability in a slip-and-fall case, a plaintiff must first prove that the defendant business had notice of the substance that caused the accident. *See Maddox*, 565 So. 2d at 16. This can be done in one of three ways: (1) by showing that the business had actual notice that the substance was on the floor; (2) by showing that the substance had been on the floor so long that the store had constructive notice of it; or (3) by showing that the store was otherwise delinquent in failing to discover and to remove the substance. *Id.*; *Cox v. W. Supermarkets, Inc.*, 557 So. 2d 831, 832 (Ala. 1989); *Richardson v. Kroger Co.*, 521 So. 2d 934, 935-36 (Ala. 1988*); see also Williams v. Wal–Mart Stores, Inc.*, 584 F. Supp. 2d 1316, 1319 (M.D. Ala. 2008). A store's delinquency can be shown where the store or one of its employees created the hazard, *see Dunklin v. Winn–Dixie of Montgomery, Inc.*, 595 So. 2d 463, 464 (Ala. 1992); *Nelson v. Delchamps, Inc.,* 699 So. 2d 1259, 1261 (Ala.Civ.App.1997), or where there is evidence that a business's inspection procedures are inadequate or were performed inadequately on the day of a plaintiff's fall. *See Hale v. Kroger, Ltd. P'ship I*, 28 So. 3d 772, 783 (Ala. Civ. App. 2009).

Plaintiff does not argue that Captain D's had actual knowledge of any substance, and rightly so. There is no evidence whatsoever to establish that Captain

D's had actual knowledge of the presence of anything on the floor before Plaintiff fell. Instead, Plaintiff seems to argue that Captain D's had constructive knowledge of the spill, as well as arguing that Captain D's created the hazardous condition. (Doc. 15 at 7-9). The court discusses each theory of liability separately below.

### A. Constructive Knowledge

Under Alabama law, "[a] storekeeper is charged with knowledge of a hazard if the evidence shows that the hazard has existed on the premises for such a length of time that a reasonably prudent storekeeper would have discovered and removed it." *Hale*, 28 So. 3d at 779 (citing *S.H. Kress & Co. v. Thompson*, 103 So. 2d 171, 174 (Ala. 1957)). "Direct evidence of the length of time the offending substance has remained on the floor is not required." *Id.* (citing *Cash, Inc.*, 418 So. 2d at 875). Instead, circumstantial evidence including "evidence regarding the nature and condition of the substance" is permissible "to allow the trier of fact to infer the length of time that the substance had remained on the floor." *Maddox v. K-Mart Corp.*, 565 So. 2d 14, 17 (Ala. 1990). The main thrust of Alabama case law in this area is to presume constructive knowledge of a hazard only if the hazard persists "for . . . an inordinate length of time." *Cash v. Winn-Dixie Montgomery, Inc.*, 418 So. 2d 874, 876 (Ala. 1982). "[A] jury may infer the length of time from evidence that the substance is 'dirty, crumpled, or mashed, or has some other characteristic which makes it *reasonable* to infer that the substance has been on the floor long enough to

9

raise a duty on the defendant to discover and remove it.'" *Williams*, 584 F. Supp. 2d at 1319 (quoting *Cash*, 418 So. 2d at 876) (emphasis added). To "establish constructive notice, the plaintiff must present evidence about the source of the substance that caused the slip and fall and not rely on speculation, conjecture or guess." *Knox, v. United States*, 978 F. Supp. 2d 1203, 1210 (M.D. Ala. 2013) (internal quotation marks and citation omitted).

Plaintiff has failed to establish constructive knowledge on the part of Defendant. First, there is no evidence specifically pertaining to the nature or condition of the substance that allegedly caused her fall. Plaintiff refers to the substance as water throughout her deposition, but that is just her speculation. Plaintiff did not even see the substance before her fall and she did not offer any evidence, other than the photograph showing multiple spots of clear liquid on the ground, and potentially some ice. (Doc. 14-1 at 65). There is also no testimony as to the size of the drops of liquid.

Second, there is no evidence regarding when the spill occurred or how long it remained on the floor before Plaintiff fell. Plaintiff wants the court to infer that the substance had been there for almost thirty minutes (doc. 15 at 3), but the court refuses to do so. Instead, the evidence shows that Plaintiff ordered her food at 12:02 p.m., filled her drink, walked to the front of the restaurant and began eating her meal. (Tunstall Dep. at 43-48). At some point during her meal, but before she was finished,

Plaintiff got up to refill her drink, walked to the drink dispensary area, and fell. (*Id*. at 48-49). The Fire Department was called and Plaintiff was initially assessed at 12:30 p.m. (*Id*. at 85, 90; Doc. 15 at 15). Within this timeline, there are too many details missing to infer how long the substance was on the floor. For instance, Plaintiff ordered her meal at 12:02 p.m., but there is no evidence as to how long it took Plaintiff to receive her meal and eat the first portion of her meal (other than her own speculation) before she got up to get the refill. And although the Fire Department assessed her at 12:30 p.m., there is no evidence as to what time the Fire Department received the emergency call and how long it took for it to get to the restaurant. Without this kind of information, the court is forced to guess as to when the spill allegedly occurred.[10] This it cannot do. *See Knox*, 978 F. Supp. 2d at 1210.

Plaintiff also points to the fact that she did not see anyone cleaning while she was in the restaurant. (*See* Doc. 15 at 3, 4). She argues that "[t]his restaurant failed to comply with corporate guidelines which mandate regularly checking these areas for hazardous conditions and making sure they are cleaned up and made safe for customers." (*Id*. at 9). Plaintiff, however, does not cite to any corporate guidelines and none are in the evidence before the court. In fact, there is nothing in the record regarding Defendant's cleaning procedures or requirements for its employees

---

[10] In fact, a possible inference from the evidence is that the spill occurred during the fall and that the substance on the floor was actually caused by the Plaintiff herself.

regarding cleaning or looking for spills. Without such evidence, the mere fact that Plaintiff did not see anyone cleaning has no meaning or context.

Similarly, the alleged statement by the then-assistant manager that the floor is slippery, (Tunstall Dep. at 89), is insufficient to establish constructive knowledge. The statement is in the abstract and has little probative value. There is no evidence as to the basis for this statement, such as evidence of others falls on the floor. There is also no testimony from the manager as to why he believed the floor to be slippery. Plaintiff complains that Defendant did not have any contact information for the assistant manager, (doc. 15 at 9), but this complaint is too little too late.

Based on the above, the court concludes that the evidence presented shows that the unknown substance had been on the floor for some length of time. It would be pure speculation, however, to infer from the evidence that the substance had been there long enough to impute constructive knowledge of the hazard on Defendant. There are too many assumptions that need to be made and Alabama law does not permit such speculation. To charge Defendant with constructive notice on the facts presented here would be to make a premises owner a de facto insurer of invitees' safety and that is clearly not the state of the law in Alabama. *See Ex parte Harold L. Martin Distrib. Co.,* 769 So.2d 313, 314 (Ala. 2000) (internal quotations omitted); *see also Hale*, 28 So.3d at 781-82 ("Given the absence of any evidence indicating that the size and location of the spill should have alerted [defendant] employees in

the area to its presence in the relatively short period between the spill and [plaintiff's] fall . . . [plaintiff] did not present substantial evidence . . . indicating that [defendant] had constructive knowledge of the hazard.").

### B. "Otherwise Delinquent"

Alabama law recognizes that, in the context of a spill, a plaintiff may establish a defendant's superior knowledge of the hazard, thereby triggering the defendant's duty to remedy the hazard or provide adequate warning, by showing that the defendant was "otherwise delinquent" in failing to discover and remove the spill. *See Williams.*, 584 F. Supp. 2d at 1320. As explained by United States District Judge Myron H. Thompson in the Middle District of Alabama,

> Plaintiffs have been able to show delinquence and survive summary judgment, without length-of-time evidence, in two general categories: cases in which the defendant was responsible for the hazardous substance on the floor; and cases in which the fact that it was raining outside suggests that the defendant should have been aware of the potential for water to collect on the floor.

*Id*. The second category of cases is not relevant to the facts here, so the court turns to the first line of cases.

The first category includes cases like *Cox v. Western Supermarkets, Inc*., where water on the floor of a grocery store appeared to have dripped from ice used to keep vegetables fresh. 557 So. 2d at 831. The store was aware that water occasionally fell on the floor in this section and, therefore, placed rubber mats in the area and assigned people to watch it. *Id*. As such, the Alabama Supreme Court

found that the supermarket was on notice that water was a problem in the produce section and may have been negligent in its response.[11] *Id*. at 823. Similarly, in *Dunklin v. Winn–Dixie of Montgomery, Inc.*, the Alabama Supreme Court found that, where the plaintiff provided evidence that water on the floor was spilled by an employee washing produce, a jury could find that the supermarket was negligent in failing to discover and clean the spill. 595 So. 2d at 464.

Plaintiff states in her brief that "Captain D's created a hazardous condition on its premises." (Doc. 15 at 7). Plaintiff does not make any meaningful argument regarding this theory of liability and does not cite to any evidence in support of this argument.[12] (*See id*. at 7-8). The mere fact that the restaurant has a section where beverages are dispensed does not equate with the conclusion that Captain D's has created a hazard sufficient to subject it to liability upon any spill that is not immediately cleaned by an employee. Plaintiff has not pointed the court to any

---

[11] The court notes that *Cox* was decided under the old "scintilla rule." The court uses this case as an example of Alabama substantive law governing proof of delinquency, as opposed to procedural law governing the amount of evidence required to overcome a motion for summary judgment.

[12] Plaintiff states that she "has no idea how or who created this hazardous condition, but Defendant was negligent for the existence thereof." (Doc. 15 at 4). Under Alabama law, there is no presumption of negligence arising from the mere fact of an injury. See Edwards v. Intergraph Servs. Co., 4 So. 3d 495, 503 (Ala. Civ. App. 2008) ("A premises owner . . . owes no duty to protect invitees from all conceivable dangers they might face while on the premises because 'the owner of a premises is not an insurer of the safety of his invitees and the principle of res ipsa loquitur is not applicable.'") (internal citations omitted); Butler v. Burlington Coat Factory of Alabama, LLC, 156 So. 3d 963, 969 (Ala. Civ. App. 2014) (holding that "[t]he owner of a premises . . . is not an insurer of the safety of its invitees . . . and the principle of res ipsa loquitur is not applicable" in a premises liability case; and that "[t]here is no presumption of negligence which arises from the mere fact of an injury to an invitee").

Alabama law supporting such a finding and the court has found none. Such a finding would, for all practicable purposes, convert premises liability into absolute liability wherever there was a spill if taken to its logical conclusion. The court refuses to do so.

**IV. CONCLUSION**

For the foregoing reasons, summary judgment is due to be granted in favor of Captain D's on Plaintiff's negligence claim. A separate order will be entered.

**DATED** this 21st day of January, 2020.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge